# BROWN *v.* OHIO NATIONAL BANK.

---

AFFIDAVITS OF DEFENSE; PROMISSORY NOTES.

1. Affidavits of defense under the seventy-third rule of the lower court should be construed liberally and need not be drawn with such precision as to meet technical objections that might be urged, but must allege facts indicating with reasonable distinctness and precision a substantial legal defense and sufficient to satisfy the court of the good faith of the defendant; *following* Cropley v. Vogeler, 2 App. D. C. 28; Bailey v. District of Columbia, 4 id. 356; Pumphrey v. Bogan, 6 id. 449; Gleason v. Hoeke, 7 id. 1; Strauss v. Hensey, 7 id. 289.

2. One who purchases from a national bank a number of shares of its capital stock, paying part cash therefor and giving his promissory note for the balance of the purchase price, and leaving the shares of stock in the hands of the bank as collateral security for the payment of the note, cannot defeat a recovery by the bank upon the note upon the ground that section 5201, R. S. U. S. prohibits national banks from making any loan or discount on the security of the shares of its own capital stock, and from becoming the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith.

3. An affidavit of defense in an action by a national bank upon a promissory note, is insufficient which alleges that the note was given to the bank in part payment for ten shares of its capital stock upon the representation by an agent of the bank that the defendant would

be made a director; that the bank went into voluntary liquidation before the maturity of a note given in renewal of the original note; that the bank since going into liquidation has paid all its depositors and other creditors; that at the time of the purchase, the shares of stock, as affiant is informed and believes and expects to show at the trial, were of no value and have been of no value since; that affiant was not made a director or offered the position, and that he expects to show at the trial that it was never the intention of the bank or those in charge thereof to offer him such a position, but that he was induced by such fraudulent representations to enter into the arrangement set forth.

No. 1106. Submitted October 11, 1901. Decided November 6, 1901.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia under the seventy-third rule of that court, for want of a sufficient affidavit of defense, in an action upon a promissory note. *Affirmed.*

The COURT in its opinion stated the case as follows:

The Ohio National Bank sued the appellant, Thomas A. Brown, upon a promissory note for the sum of $839, which recites the deposit, as collateral security, of a certificate for ten shares of the capital stock of the plaintiff corporation.

The declaration was supported by an affidavit as required by Rule 73, to the sufficiency of which no objection was made.

Defendant filed an affidavit of defense which, having been held insufficient, is here recited in full:

" I am the defendant in the above-entitled cause; and I deny the right of the plaintiff in said cause, The Ohio National Bank, as to the whole or any part of its claim against me, as set out in its declaration, particulars of demand, and affidavit. The grounds of my defense thereto are as follows: In the month of December, 1896, an agent of the plaintiff, The Ohio National Bank, represented to me that it was the desire of those in charge of the affairs of said bank, namely, certain officers of said bank, who owned or controlled a majority of its capital stock, to make certain changes in its board of directors by electing certain residents

of the District of Columbia as members of the board in place of certain nonresidents, it being believed it would be to the interests of the bank so to do. It was also represented to me that I would be elected a member of said board of directors if I would purchase ten shares of the capital stock of the bank. I was unwilling to buy outright any of the shares of the said capital stock, but, upon it being proposed to me on behalf of the bank or said holders of a majority of its capital stock that the bank would loan practically all of the money necessary for me to purchase ten shares of the said capital stock and would take said ten shares as collateral to secure said loan, I consented to this arrangement, and on or about December 29, 1896, gave my note payable to the bank for about nine hundred and forty dollars ($940), less the sum of $90 which I paid in cash to said bank, the purchase being of ten shares of the said capital stock at the price of ninety-four dollars ($94) a share. The original note, which I gave to said bank, was made payable in about ninety days after date, and at its maturity I paid up the interest which had accrued thereon, curtailed the indebtedness represented thereby in a small amount, and gave a new note for the balance. The note in suit is a renewal of the original note and represents the purchase price of the said stock at nine hundred and forty dollars ($940), less the sum or sums that I have paid in cash on account of said purchase price. The plaintiff bank, a majority of whose capital stock was owned by two or three of its officers, went into voluntary liquidation on or about December 31, 1897. The said bank has since paid all of its obligations to its depositors and other creditors, but no final settlement of its affairs has been made so far as the shareholders are concerned, although various efforts have been made on the part of the shareholders to obtain a final settlement of the bank's affairs. I also aver on information and belief and expect to prove at the trial that at the time I was induced to purchase the said shares of stock in question in the manner aforesaid the said shares were of no money value (although I was ignorant of that fact), and have been of no value since; that those in charge

of the affairs of said bank were making strenuous efforts to prevent the real financial condition of the bank from being publicly known; that at or about the time of said purchase no purchaser or purchasers, for cash in the open market or otherwise could be found of the shares of capital stock of said bank, although a large amount of such capital stock, aggregating $20,000, was being offered for sale; that those in charge of said bank, desiring to get in said stock so offered for sale, acquired, in some way unknown to me, the same on behalf of said bank and induced and procured various persons, including myself, to go through the form of purchasing said stock so acquired by giving their promissory notes therefor for a price known to be fictitious to those in charge of said bank's affairs, but not to said purchasers, and to secure the payment of said promissory notes by allowing said bank to retain said shares of stock as collateral security for the payment thereof; that said proceeding was declared to be unlawful by the Comptroller of the Currency, and thereupon said bank either released said purchasers or their purchases (except affiant) or got from them money or indorsed notes in payment of said stock; but affiant was not informed of the transaction or given any opportunity of withdrawing therefrom.

" I further aver that I was never made a director of said bank, nor was such a position ever offered or tendered me, and I expect to show at the trial hereof that it was never the intention of the said bank or those in charge thereof to offer or tender me such position, but that I was induced by such fraudulent representations to enter into the arrangement above set forth.

" I further aver that the said promissory note sued upon is wholly without consideration and is void, first, because the shares of stock for which said note was given were valueless at the time of the alleged transfer of the same to me and have been of no value since; and, secondly, because the said bank, being a national bank, was prohibited by law from making any loan on the security of its capital stock under the circumstances set forth."

Judgment for the plaintiff was rendered upon motion therefor, notwithstanding the affidavit of defense, and the defendant has appealed.

*Messrs. Davis & Tucker,* for the appellant:

1. The original transaction between the appellee and appellant was in substance an attempted loan or discount upon the security of the capital stock of the appellee bank and void under Sec. 5201, R. S. U. S. If the appellant had received and retained any benefit in the transaction, he would be estopped to make this defense; but as he has not, but, on the contrary, has parted with $109, for which he has received nothing, the contract, whatever it was, is executory, and the defense is a proper one. Appellee is still in possession of the certificate of stock. For construction of Sec. 5201, U. S. R. S., see *Bank* v. *Stewart,* 107 U. S. 676. Where neither party has acted upon an *ultra vires* contract, the only injustice caused by a refusal to enforce it is the loss to the parties of prospective profits, and this is too slight a consideration to weigh against the reasons of public policy for declaring it void and not enforceable. See 27 A. & E. Ency. of Law (1st ed.), 361 *et seq.;* Green's Brice's *Ultra Vires,* p. 42. In *Bank* v. *Lanier,* 11 Wall. 369, it was held that a contract whereby a banker, to secure a deposit made by a national bank with his firm, placed with the national bank a number of shares of the latter's capital stock, was void and not enforceable under Section 5201.

2. The note in suit is void for want of consideration, appellant's affidavit of defense stating that he is informed and believes and expects to show at the trial that the shares of stock for which the note in suit was given were and are valueless. Of course the value of the capital stock of a corporation depends upon its financial condition. If the debts of the concern are greater than its assets — in other words, if it is insolvent — its stock has no value. The appellant expected upon the trial to show that such was the condition of the appellee when it unloaded ten shares of its capital

stock upon him, and that its officers who controlled its opera-
tions and who owned a majority of its capital stock knew
this, and resorted to most desperate efforts and most ques-
tionable methods to get rid of its stock.   It is admitted that
mere inadequacy of consideration (unless it be so inadequate
as to show fraud) will not render a contract void.   To have
this effect there must be a total want of consideration.   Here
it is submitted there is no consideration whatever to support
the note sued on.   If the shares of stock were valueless, as is
alleged, what benefit has the appellant received, or what
detriment has the appellee suffered ?   A valuable considera-
tion is necessary to support any contract, and the rule makes
no exception as to the character of the consideration respect-
ing negotiable instruments when the consideration is open to
inquiry.   Daniels on Neg. Instr. (4th ed.), Sec. 179.   A
promissory note, the sole consideration of which was an in-
terest in a telephone exchange company, whose business and
property were valueless except as operated to infringe upon
the rights of another company, is without consideration and
void.   *Clemshire* v. *Bank,* 53 Ark. 512, and cases cited.   A
promissory note given by a widow to a creditor of her de-
ceased husband for the amount of his debt is void for want
of consideration, if the husband has left no estate or assets,
though the creditor gives the widow at the same time a re-
ceipted bill acknowledging payment from her husband's
estate of the note.   *Williams* v. *Nichols,* 10 Gray (Mass.),
83.   The plaintiff held the note of the defendants' deceased
father, which he gave up to the defendants upon their prom-
ise to pay the amount.   The deceased left no property and
there was no administrator and the note was, therefore,
worthless.   *Held,* that the promise of the sons was *nudum
pactum.   Schroeder* v. *Fink,* 60 Md. 436.

3. The facts disclosed in appellant's affidavit of defense
show such fraud as, if proved, would render the note void in
the hands of the payee.   The shares of stock of the bank for
which the note was given were issued, if at all, by the bank
itself or its officers, who owned a majority of its stock.   They
knew its financial condition and the worthlessness of the

stock. In the words of the affidavit of defense, they "were making strenuous efforts to prevent the real financial condition of the bank from being publicly known," and "induced and procured various persons, including myself, to go through the form of purchasing said stock * * * for a price known to be fictitious." In addition to this, the appellant, as his affidavit of defense shows, was induced to enter upon the transaction by the promise by an agent of the bank that he should be made a director, and he says that he was never made a director, nor was such position ever offered or tendered him, and that he expects to show at the trial that it was never the intention of the said bank, or those in charge thereof, to offer or tender him such position; but that he was induced by such fraudulent representations to enter into the arrangement. Besides this, the bank went into voluntary liquidation before the note in suit matured, and while it has paid its depositors, its shareholders have never been able to obtain a settlement of its affairs. While inadequacy of consideration in the origin or transfer of a negotiable instrument is not, in itself, a defense to a suit upon it, yet it is oftentimes a circumstance strongly tending to show a fraud in the contract in which it was given or transferred. Evidence, therefore, in a suit on a note for certain pictures, is not admissible for the purpose of reducing the damages by proving that they were of inferior value, but it would be good to show that they were fraudulently palmed off on the defendant. 1 Daniels on Neg. Instr. (4th ed.) Sec. 193, citing, among other cases, *Solomon* v. *Turner,* 1 Stark. 51 (2 E. C. L. R.). Surely there is enough in this affidavit of defense to show that these ten shares of stock were "fraudulently palmed off" on this appellant; and, if so, the appellant is entitled to a trial.

4. Fairly tested by the rule laid down by this court, that such affidavits are to receive a liberal construction, the affidavit of defense here is a sufficient one. *Lawson* v. *Hammond,* 4 App. D. C. 467; *Gleason* v. *Hoeke,* 5 App. D. C. 1; *Strauss* v. *Hensey,* 7 App. D. C. 289; *Pumphrey* v. *Bogan,* 8 App. D. C. 449; *St. Clair* v. *Conlon,* 12 App. D.

C. 161. It is not to be tested as a plea would be upon a demurrer. *Bailey* v. *District of Columbia,* 4 App. D. C. 356. The fact that a portion of it is based upon information and belief and expectation of being able to prove the facts recited at the trial does not render it insufficient. *Richmond* v. *Cake,* 1 App. D. C. 447.

*Mr. Jesse C. Adkins,* for the appellee.

Mr. Justice SHEPARD delivered the opinion:

1. Rule 73, enacted by the Supreme Court of the District under power conferred by statute, provides that where the plaintiff has accompanied his declaration with the required affidavit, the defendant, in order to prevent judgment on motion, must file, " along with his plea, if in bar, an affidavit of defense denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating also, in precise and distinct terms, the grounds of his defense, which must be such, as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part."

Many cases have been determined by us on appeal, involving in one form and another the application of this rule; and, whilst the facts and circumstances of particular cases differ so that the decision of one cannot afford a certain rule for the determination of another, yet some principles have been well settled that have general application in all. Some of these may be appropriately stated, preliminary to the consideration of the several points of defense that are claimed to appear in the appellant's affidavit, and are presented as grounds for the reversal of the judgment.

The rule deprives a party of his ordinary right of jury trial and should be strictly interpreted as regards to the affidavit of the plaintiff, and broadly and liberally construed as regards the counter affidavit of the defendant. *Lawrence* v. *Hammond,* 4 App. D. C. 467; *Gleason* v. *Hoeke,* 5 App. D. C. 1, 5.

The affidavit of defense is not the substitute for a special

plea, and need not be drawn with such precision as to meet technical objections that might be urged; but, at the same time, it must allege facts indicating with reasonable distinctness and precision a substantial legal defense, and sufficient to satisfy the court of the good faith of the defendant. *Cropley* v. *Vogeler,* 2 App. D. C. 28, 32; *Bailey* v. *District of Columbia,* 4 App. D. C. 356, 370; *Gleason* v. *Hoeke,* 5 App. D. C. 1, 7; *Strauss* v. *Hensey,* 7 App. D. C. 289; *Pumphrey* v. *Bogan,* 6 App. D. C. 449, 451.

" If there be nothing in the general statement of the facts of the defense to indicate or suggest evasion or studied uncertainty of allegation or denial in matters susceptible of clear and precise statement; and if it appear by any reasonable or fair construction that the facts so generally stated would constitute a defense to the plaintiff's action, in whole or in some part, the constitutional right of trial by jury must be accorded." *St. Clair* v. *Conlon,* 12 App. D. C. 161, 163. See also *Magruder* v. *Schley,* 17 App. D. C. 227, 231.

1. The first proposition in support of the sufficiency of the affidavit is, that the note represents a loan of money by a national bank upon the security of its capital stock, in violation of the express prohibition of Section 5201, R. S. U. S., which reads as follows:

" No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall, within six months from the time of the purchase, be sold or disposed of at public or private sale; or in default thereof, a receiver may be appointed to close up the business of the association according to Section 5234."

We do not find that the statement of the transaction shows a loan of money by the plaintiff upon the security of shares of its capital stock owned and held by the defendant. On the contrary, it appears that the defendant purchased the stock from the bank, chiefly upon credit, and executed his note for the purchase money, leaving the stock in the posses-

sion of the bank as security for the payment of the note. The affidavit states that the bank had, in some way, come into possession and ownership of shares of its own stock of the face value of $20,000, which it undertook to resell.

In the absence of proof to the contrary, even if the same would be admissible, this ownership was presumably acquired under the permission of the foregoing section, and having been so acquired it was the duty of the bank to resell the same within six months at public or private sale. There is nothing in the law that would prevent, or punish, a private sale upon credit with the retention of the stock as collateral security, provided the transaction be, in good faith, what it purports to be.

In this view of the substantial effect of the allegation of the affidavit of defense, it becomes unnecessary to discuss the interesting arguments, or review the various decisions relating to the effect of section 5201 upon loans made in violation of its terms.

3. The next ground of defense is the failure of consideration of the note, and must be determined by the following facts which appear substantially in the affidavit.

The bank had been organized under the laws of the United States and was a " going concern " on December 29, 1896, when defendant purchased ten regular shares of its capital stock, paying $90 in cash and executing his note for the remainder due in ninety days. This note was renewed from time to time until October 28, 1897, the date of the note in suit. The bank went into liquidation December 31, 1897, and " has since paid all of its obligations to its depositors and other creditors, but no final settlement of its affairs have been made so far as the shareholders are concerned, although various efforts have been made on the part of the shareholders to obtain a final settlement of the bank's affairs."

The motive of the purchase was the representation to defendant by an unnamed " agent of the plaintiff " who, he says, " represented to me that it was the desire of those in charge of the affairs of said bank, namely, certain officers of said bank, who owned or controlled a majority of its capital

stock, to make certain changes in its board of directors by electing certain residents of the District of Columbia as members of the board in place of certain nonresidents, it being believed it would be to the interests of the bank to do so. It was also represented to me that I would be elected a member of said board of directors if I would purchase ten shares of the capital stock of the bank."

The remaining relevant statement under this point is: " I also aver on information and belief and expect to prove at the trial that at the time I was induced to purchase the said shares of stock in question in the manner aforesaid, the said shares were of no money value (although I was ignorant of that fact), and have been of no value since." The remaining allegations of the affidavit, as will appear in the statement, add no weight to the foregoing, but either repeat them or have relation to the allegations of fraudulent representations.

Viewed apart from the defense of fraud hereafter to be considered, we cannot regard the affidavit as indicating a substantial defense of failure of consideration.

It is plain that the stock had been legally issued, had come into the ownership of the corporation, and had been regularly transferred to the defendant in accordance with the terms of his contract of purchase. That the shares had some nominal value, at least, when purchased, was not, and apparently could not, be denied. Aside from their validity as part of the capital stock, the existence of some actual value, however small, is apparent in the fact that the bank remained in business for a year longer, during which the defendant voluntarily renewed his note once, and probably twice, and that, since going into voluntary liquidation, it has satisfied the demands of all depositors and other creditors.

It is plain that the defendant actually received all that he bargained for, notwithstanding the subsequent failure to realize his expectations of profit or advantage.

It seems to be thoroughly well-settled law, that failure of consideration must be total to constitute a good defense to an

action upon the promise. *Greenleaf* v. *Cook,* 2 Wheat. 13, 16.

If there be any consideration at all the courts will not inquire into its adequacy, or attempt to weigh the extent of it. *Nash* v. *Lull,* 102 Mass. 60, 62; *C. & A. RR. Co.* v. *Derkes,* 103 Ind. 520, 524; *Price* v. *Jones,* 105 Ind. 543, 545; *Johnston* v. *Smith,* 86 N. C. 498, 501; *Van Norman* v. *Barbeon,* 54 Minn. 388, 393; *Gore* v. *Mason,* 18 Me. 84, 86; *Lambert* v. *Heath,* 15 M. & W. 486; *Cheale* v. *Kenward,* 3 DeG. & J. 27, 31; Benjamin on Sales (Corbin's ed.), p. 542; Pollock on Cr. P. P. 172, 174.

Benjamin, where cited, states the following as his conclusion: "But there is not a failure of consideration when the buyer has received that which he really intended to buy, although the thing bought should turn out to be worthless."

And Pollock concludes a discussion of the point thus: "The principle of the cases may be summed up in the statement made in so many words by the judges in more than one of them, that the promisor has got all that he bargained for." See also 6 A. & E. Ency. of Law, 780.

The expectation of defendant that he would be elected a director of the bank, the qualification for which, by law, is the ownership of at least ten shares of stock, is of no consequence. He could not have become a director save by election of his fellow shareholders, nor could he qualify without discharging all liens upon his stock. R. S., Sec. 5147.

Passing by the question whether such expectation could form a part of the contract of purchase, it does not appear from the facts alleged, that it actually entered into the agreement of the parties. *Philpot* v. *Gruninger,* 14 Wall. 570, 577. The following language of Mr. Justice Strong, in that case, is quite applicable here: "It is not to be doubted that there is a clear distinction sometimes between the motive that may induce to entering into a contract and the consideration of the contract. Nothing is consideration that is not regarded as such by both parties. It is the price voluntarily paid for a promisor's undertaking. An expectation of results often leads to the formation of a contract, but

neither the expectation nor the result is, ' the cause or meritorious occasion requiring a mutual recompense in fact or in law.' "

The decisions cited in support of the appellant's contention do not, upon the facts of their foundation, maintain a contrary doctrine to that enounced.

In *Williams* v. *Nichols,* 10 Gray, 83, there was a total failure of consideration. The widow of an intestate gave her note to his creditor upon the assumption that assets subject to the debts of intestate had, or would, come into her possession. It transpired that there were no such assets. As was said by the court, it was clear that the widow derived no benefit from the transaction and the creditor sustained no damage.

The facts of *Schroeder* v. *Fink,* 60 Md. 436, are substantially the same. In *Clemshire* v. *Bank,* 53 Ark. 512, the note sued on was given in purchase of a telephone equipment, etc., which could not be operated without infringing an outstanding patent.

The doctrine of that case is the same as in the numerous cases which hold that a note given for an interest in or under a void patent is without consideration, as in *Harlow* v. *Putnam,* 124 Mass. 553, and others that might be cited. But there is an established distinction between such a promise and one given in exchange for a right under a valid patent which, however, proves to be without value, as in *Nash* v. *Lull,* 102 Mass. 60, 62, and others before cited.

4. The last question in the case is whether the affidavit states a defense of fraud in procuring the purchase of the stock and the execution of the note.

Before proceeding to its determination, it is proper to observe, that whilst courts will not inquire into the adequacy of the consideration alone, its inadequacy may, in connection with other things, become of importance as a circumstance tending to establish fraud where the validity of the contract is in dispute upon that ground.

The only specific charge of fraud is in the paragraph following those that have been mentioned before, as follows:

" I further aver that I was never made a director of said bank, nor was such a position ever offered or tendered me, and I expect to show at the trial hereof that it was never the intention of the said bank or those in charge thereof to offer or tender me such position, but that I was induced by such fraudulent representations to enter into the arrangement above set forth." Whilst defendant may have believed that the stock was worth the sum of about ninety-three dollars per share, which he contracted to pay for it, yet there is no charge of fraudulent misrepresentation of its value, or of the actual financial condition of the bank at the time. Apparently without inquiry into this condition, he was induced to purchase the stock by means of the promised election to membership of the board of directors. Assuming that these representations and promises were made on behalf of, and in the interest of the bank, defendant was bound to know the inability of the bank to authorize such promises or to execute them when made. The representations were not of facts upon which he had any right to rely, but related to matters controlled by the provisions of the National Banking Act. Directors are not chosen by the bank, but for the bank, by the holders of the capital stock at the time of election; and, as we have seen, the defendant, to be eligible, was required to own unincumbered stock. Having no such stock he could not have become a director even if otherwise regularly elected.

There remains, therefore, no ground of defense to the action, but that of inadequacy of consideration, which, as we have seen, is not sufficient.

The court did not err in granting the motion for judgment, notwithstanding the affidavit of defendant, and it will be affirmed, with costs.

*Affirmed.*